**SO ORDERED.**

**SIGNED this 28 day of September, 2017.**

*Stephani W. Humrickhouse*

**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

**IN RE:**

**SARA LIANNE HAMILTON-CONVERSANO**          **CASE NO. 17-00128-5-SWH**
                                             **CHAPTER 7**
>          **DEBTOR**

## ORDER REGARDING MOTION TO DISMISS

The matter before the court is the motion to dismiss pursuant to 11 U.S.C. §§ 707(b)(1) and (b)(3) filed by the bankruptcy administrator, Dkt. 16. A hearing took place in Raleigh, North Carolina on July 26, 2017.  The primary issue in this case revolves around the debtor's effort to discharge through chapter 7 the debt owed on the family's sole credit card (used to charge household expenses), and how her non-filing spouse's income should be counted (or not) in determining her eligibility for chapter 7 under the unique facts of this case.

### BACKGROUND

Sara Lianne Hamilton-Conversano filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on January 10, 2017.  She filed her schedules on January 16, 2017, Dkt. 10. On February 10, 2017, the chapter 7 trustee filed a report of no distribution, indicating that the section 341 meeting of creditors was conducted and the trustee determined that there would be no non-exempt assets to administer for the bankruptcy estate.  On February 21, 2017, the bankruptcy

administrator ("BA") advised the court that she determined that the case should be presumed to be an abuse under § 707(b), and requested the court to issue a notice to that effect.  The statutory notice was issued by the clerk on February 22, 2017, Dkt. 11.  On March 2, 2017, the BA filed a motion seeking production of documents pursuant to Rule 2004, Dkt. 13, which was allowed by order of March 6, 2017, Dkt. 14.  The BA filed the instant motion to dismiss on March 23, 2017, Dkt. 16, and Mrs. Conversano filed her response on April 24, 2017, Dkt. 21.  Thereafter, the BA conducted depositions of Mrs. Conversano and her non-filing spouse, Francis Conversano, pursuant to Rule 2004.

Mrs. Conversano's schedules show that she and her husband own real property with a value of $200,000 and a mortgage in the amount of $149,595.37. Dkt. 10 at 3.  The schedules also list two vehicles: a 2005 Dodge Ram and a 2008 Toyota Camry. *Id.* at 4.  The only listed creditors are BB&T, which holds the mortgage on the residence, Dkt. 10 at 16, American Express ($46,692.52), AT&T Mobility ($81.61), and Citizens Bank ($366.75). *Id.* at 17-18.  The Statement of Financial Affairs ("SOFA") identifies a lawsuit that was filed by American Express against Mrs. Conversano prepetition. *Id.* at 29.  The Statement of Intention indicates that payments on the mortgage are current. *Id.* at 34.

Mrs. Conversano's Schedule I shows that she is employed by SHC Training LLC, and estimates her monthly income from horse training at $100. Dkt. 10 at 23.  Schedule I also lists estimated income from substitute teaching in the amount of $275 per month. *Id.*  Schedule I also reflects that Mr. Conversano is employed as a superintendent with Skanska USA with monthly gross income of $8,634 and monthly take-home pay after payroll deductions of $5,213.73.  Line 17 of Schedule I, which requests information as to an expected increase or decrease in income within the year after filing, provides as follows:

> *Husband stopped 401-k deduction and SEOP-Salary deduction at the end of last year, so family could pay ongoing living expenses. Debtor's income is about to disappear. Husband has received bonuses in the past, but they are not guaranteed.*

Dkt. 10 at 23. At the hearing, Mrs. Conversano testified that she is no longer training horses, and that she would be starting as a full-time teacher at Thales Academy in the 2017-2018 academic year.

Mrs. Conversano's Schedule J indicates that she has two children ages 4 and 8. Dkt. 10 at 24. After subtracting expenses, Schedule J shows net monthly income of $1,083.67. *Id.* at 25. Line 24, which requests information related to expected increases or decreases in expenses within the year after filing, indicates as follows:

> *Excess income arises out of non-filing Spouse's net income, which has increased due to his eliminating retirement savings which were previously deducted during the 6 months prior to filing. He intends to resume the retirement savings after creating an appropriate "rainy day" fund.*

*Id.*

Finally, Mrs. Conversano's Form 122A-1 calculates her Current Monthly Income ("CMI") as $10,717.85, while her "means test," Form 122A-2, includes the following line items in the "marital adjustment":

| | |
|---|---|
| All Payroll Deductions | $4,538.51 |
| Private School | $ 416.67 |
| Student loan payment | $ 328.20 |

Dkt. 10 at 36-38. With that adjustment, Mr. Conversano's spousal contribution (income "not used to pay for the household expenses") is reduced to $3,591.73, and Mrs. Conversano's CMI is reduced to $5,434.47. Dkt. 10 at 38. After subtracting allowable expenses, Mrs. Conversano's means test results in monthly disposable income of $52.72, Dkt. 10 at 45, such that the presumption of abuse does not arise.

3

At the hearing, Mrs. Conversano testified that she and her husband have two joint bank accounts (one checking, one savings), and neither has an individual account. Further, the American Express card that is at issue in this case was the only household credit card, and while it was issued in Mrs. Conversano's name, Mr. Conversano was an authorized user. Both Mr. and Mrs. Conversano used the credit card to purchase household items (including a refrigerator, television, and furniture) and to pay household bills (including the utility bills and AT&T) and regular expenses (including groceries). Neither of the Conversanos carry cash. Mrs. Conversano received the statements and was responsible for paying the American Express bill, but the money came from the joint account into which both incomes were deposited. While payments were current for many years, she fell behind in 2012. Thereafter, the balance and the fees became so insurmountable that she stopped making payments on the card in January or February 2016. Mrs. Conversano testified that she did not tell Mr. Conversano that she was not making payments on the card. As noted in the SOFA, American Express sued Mrs. Conversano for the balance due on the account in mid-2016, and the bankruptcy filing was in response to its collection effort. Mrs. Conversano concedes that the chapter 7 petition was filed solely to address the American Express debt.

## DISCUSSION

### I.   MOTION TO DISMISS PURSUANT TO § 707(b)(1)

#### A.   Standard and Contentions

Section 707(b)(1) provides, in relevant part,

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a

4

case under chapter 11 or 13 of this title, if it finds that the granting of relief would
be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b)(1).  Section 707(b)(2)(A)(i) sets forth a formula pursuant to which a case is

presumed to be an abuse for purposes of § 707(b)(1), colloquially known as the "means test."

 The BA maintains that Mrs. Conversano's means test calculation does not include all

sources of income and that the "marital adjustment" is incorrect.  Had the proper figures been used,

the BA contends, the presumption of abuse would arise.  Specifically, the BA contends that Mr.

Conversano receives additional income in the form of life insurance contributions and cell phone

reimbursement that should be included as income from the non-filing spouse, and that a deduction

for private school tuition for the Conversanos' child should be capped at $160.42, rather than taken

as a martial adjustment in the amount of $417.86.  Using the BA's asserted figures would result in

an additional $438.97 per month in available income, which would be sufficient to create a

presumption of abuse under the means test calculation of § 707(b)(2).

 Mrs. Conversano disagrees with the BA's methodology in determining the amount of

relevant income from her non-filing spouse that counts toward her CMI.  Pointing out differing

language in the statute and the Official Form,[1] she maintains that only Mr. Conversano's actual

contributions to the household expenses must be included as her income, and that his total income

is not relevant to the means test calculation.  Further, Mrs. Conversano contends that the $417.86

monthly private school tuition paid by Mr. Conversano for one of their children is not a household

---

[1] Section 101(10A)(B) defines "current monthly income" to include "any amount paid by any entity
other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's
dependents . . ." 11 U.S.C. § 101(10A)(B).  At the same time, Official Form 122A-1, the Chapter 7
Statement of Your Current Monthly Income, starts with the full amount of the non-filing spouse's income,
which is then adjusted in Official Form 122A-2, the Chapter 7 Means Test Calculation, to subtract any part
of the non-filing spouse's income *not* used to pay for the household expenses of the debtor or the debtor's
dependents, requiring delineation of the purpose for which the income is used.  *See* Official Form 122A-2,
Part 1 No. 3.

5

expense that must be counted in her CMI, but she concedes that all of the case law holds otherwise. At the hearing, she presented a revised means test form (Exhibit 3) that, among other adjustments, added the tuition expense of $417.86 to Mr. Conversano's household contributions (resulting in an increase in CMI) and subtracted the allowable tuition expense amount of $160.42. She contends that the revised form shows that the presumption of abuse still does not arise.

### B.    Burden of Proof

In general, the party seeking a determination that a case is abusive bears the burden of proof. *In re Williams*, 424 B.R. 207, 210 (Bankr. W.D. Va. 2010) (citing *In re Meade*, 420 B.R. 291 (Bankr. W.D. Va. 2009). Under *In re Perelman*, 419 B.R. 168, 177 (Bankr. E.D.N.Y. 2009), once a party establishes a prima facie case of abuse under § 707(b)(3), the burden shifts to the debtor to controvert the prima facie case. *Williams*, 424 B.R. at 210-11. The *Williams* court applied a similar burden-shifting standard under § 707(b)(2)(A):

> Thus, if the [United States] Trustee asserts that a debtor has incorrectly stated his expenses on Form 22A and if corrected, the debtor's expenses would yield disposable income that is high enough to raise the presumption of abuse, the burden of proof rests upon the Trustee to show the validity of its proposed expenses figures and ultimately that abuse exists. If the Trustee is able to introduce enough evidence in support of its revised figures that a court, using a preponderance of the evidence standard, could infer the validity of those figures and use them to find that a presumption of abuse arises under § 707(b)(2)(A), then a prima facie case of abuse has been established. Once a prima facie case of abuse under § 707(b)(2)(A) is established the burden of proof shifts to the debtor who, in accordance with § 707(b)(2)(B), must show that "special circumstances" justify the expenses the debtor has claimed on Form 22A. In summary, a prima facie case results in presumed abuse under § 707(b)(2) and the burden is on the Debtor to rebut and to shift the ultimate burden of proof back to the moving party.

*Williams*, 424 B.R. at 211.

Here, the burden is on the BA to show that Mrs. Conversano used the incorrect figures, and that if the correct figures are used, a presumption arises. Then, the burden shifts to Mrs.

Conversano to show that her figures are correct or that special circumstances exist to rebut the presumption.

###   C.   Analysis

Mrs. Conversano's argument noting the difference in how the statute counts the non-filing spouse's contributions to household income (defining CMI as including contributions to household expenses from all sources) and how the Official Form calculates those figures (non-filing spouse's total income minus amounts *not* contributed to household income) is compelling; however, she did not present any evidence that would assist the court with computing what she maintains is the appropriate figure. Indeed, to the extent Mrs. Conversano had no income for a period of time, by definition Mr. Conversano paid for all of the household expenses and all of the expense figures would also be counted as income from the non-filing spouse.

The information the court *does* have is the data included in Official Forms 122A-1 and 122A-2. The filed Form 122A-2 lists the amount of Mr. Conversano's income *not* regularly used for household expenses as $5,283.38, Dkt. 10 at 38, meaning, in theory, that the amount of his income that *is* regularly used for household expenses is $3,591.73. However, as noted above, the filed Form 122A-2 subtracts the private school tuition paid for one of the Conversanos' children in the amount of $416.67. This deduction is improper, for two reasons: first, the case law establishes that tuition is a household expense, and second, Congress has capped the amount of tuition that may be deducted from the means test at $160.42. Accordingly, the court will re-calculate Mrs. Conversano's filed means test (Dkt. 10 at 38-46) to reflect the proper application of the private school tuition.

| | | |
|---|---|---|
| CMI (Form 122A-1 line 1) | | $10,717.85 |
| Adjusted spousal income *not* used to pay for household expenses (Form 122A-2 line 3) | $ 8,875.11 (122A-1 line 2 col. B) -$4,538.51 (payroll deductions) - $ 328.20 (student loan payment) | - $4,866.71 |
| Adjusted CMI (Form 122A-2 line 4) | | $ 5,851.14 |
| | | |
| Allowed deductions claimed (Form 122A-2 line 38) | | $ 5,381.75 |
| Adjusted to add private school tuition allowance (Form 122A-2 line 29) | | $     160.42 |
| Adjusted allowed deductions | | $ 5,542.17 |
| | | |
| Adjusted net monthly disposable income (Form 122A-2 line 39c) | (Adjusted CMI minus adjusted allowed deductions) | $     308.97 |
| | | |
| Adjusted net disposable income X 60 months (Form 122A-2 line 39d) | | $18,538.20 |

Under the statutory formula, where 60 months of net disposable income exceeds $12,850, the case is presumed to be an abuse.[2]  Here, the adjusted net disposable income is $18,538.20, and the presumption arises.

As noted above, Mrs. Conversano submitted a hypothetical means test at the hearing, Exhibit 3, which revised her income to reflect her postpetition earnings (no longer showing her income from horse training or substitute teaching, but adding her income from her new teaching position), and adjusted the expenses to properly reflect the private school tuition.  That revised hypothetical means test included Mrs. Conversano's (slightly lower) postpetition income figures

---

[2] Mrs. Conversano's Form 122A-2 also listed as "special circumstances" an expected net reduction in disposable income, Dkt. 10 at 46-47, showing her loss of horse farm income and a resulting reduction in tax and day care expenses for a net reduction of $498.41 per month.  Pursuant to § 707(b)(2)(B), special circumstances may be used to rebut the presumption of abuse.  Because the delineated special circumstances did not actually occur, the court need not consider them.

without also reflecting that Mr. Conversano's income increased, so that it still does not present a complete picture.[3]  In other words, tweaking one side of the equation without adjusting the other does not result in an accurate assessment of the statutory formula and does not rebut the BA's prima facie showing that the correct treatment of the private school tuition results in a presumption of abuse.

Based on adjusting only the private school tuition (and not the other deductions from CMI that the BA contested), the means test establishes that there is a presumption of abuse in this case, and the case will be dismissed.  Nonetheless, the court will also review the BA's motion pursuant to § 707(b)(3).

## II.   MOTION TO DISMISS PURSUANT TO § 707(b)(3)

### A.   Standard and Contentions

Section 707(b)(3) sets forth an alternative basis on which the court may find abuse under § 707(b)(1) where the presumption of abuse does not arise through the "means test" calculation. It provides, in relevant part,

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(i) does not arise or is rebutted, the court shall consider—
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3).

---

[3] Further, the applicable income figures for means testing are the six months prior to filing; the § 707 determination must be made based on the statutory calculation, not the hypothetical means test using postpetition income information unless those figures are intended to reflect "special circumstances" to rebut the presumption of abuse.

9

The Fourth Circuit established the factors that should be considered under the "totality of the circumstances" for determining abuse in *In re Green*, 934 F.2d 568, 572 (4th Cir. 1991). While *Green* pre-dated the enactment of the current version of § 707(b), its factors have continued to inform courts' decisions regarding abuse. *In re Gregory*, 471 B.R. 823, 829 (E.D.N.C. 2012). The factors include:

(1)     Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2)     Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3)     Whether the debtor's proposed family budget is excessive or unreasonable;

(4)     Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(5)     Whether the petition was filed in good faith.

*Green*, 934 F.2d at 572 (citations omitted).

The BA contends that this case simply does not pass the "smell test," as Mrs. Conversano seeks to discharge a debt incurred entirely to pay household expenses while the household budget (which includes Mr. Conversano's income) is sufficient to pay at least a portion of the debt. She also points to the net monthly income of $1,083.67 reflected in Schedules I and J in support of her position. Mrs. Conversano, on the other hand, maintains that Mr. Conversano has no liability on the American Express account, and that American Express is no worse off with Mrs. Conversano in bankruptcy than it would be outside of bankruptcy; specifically, she has no assets against which it could enforce a judgment, and it has no claim against Mr. Conversano. Mrs. Conversano further contends that there is no legal basis to require Mr. Conversano to pay Mrs. Conversano's debts, and that the excess income appearing in Schedules I and J is a reflection of Mr. Conversano's decision to stop certain retirement contributions while Mrs. Conversano was out of work, contributions that he hopes to resume. Finally, Mrs. Conversano notes that there would be no

distribution to unsecured creditors in a chapter 13 case, so there is also no benefit to requiring her to convert her case.

### B.      Analysis

Mrs. Conversano testified at length about the use of the American Express card, almost always discussing its use in the first person plural: "we were current," "our intention was," "we" thought it safer to make purchases through the card because of identity theft, "we didn't like to carry cash." It was the only credit card the Conversanos had, and both used it for regular (and substantial) household expenses. They purchased a house and had a second child in 2012, and used the credit card for furniture, diapers, food, and clothing: "for everything the household had for its expenditures." Mrs. Conversano testified that she began falling behind on her payments after 2012, and that while she thought she could catch up, she eventually stopped making payments (and stopped using the card) in early 2016.

At the hearing, Mrs. Conversano pointed out that her household expenses are not substantial. However, at least up until the Conversanos stopped using it, the household expenses were charged to the American Express card, making it difficult to determine whether those expenses were substantial, reasonable, or otherwise.[4] The only information before the court is that the balance on the account as of the petition date was $46,692.52.

Allowing this case to proceed in chapter 7 contravenes the intended purpose of the Bankruptcy Code, a discharge "for the honest but unfortunate debtor who is seeking a fresh start, not a head start." *In re O'Brien,* 328 B.R. 669 (Bankr. W.D.N.Y. 2005). Mr. Conversano has a substantial income, but by putting all of the household expenses on a single credit card in Mrs.

---

[4] Indeed, if Mrs. Conversano were to have calculated her CMI when the household expenses were all charged to that card, it appears that she would claim no contribution to household expenses from her non-filing spouse, which demonstrates the problem with this situation.

Conversano's name, he can avoid any responsibility for their shared expenses.  That may be what American Express agreed to when it issued the card to Mrs. Conversano, but that does not mean this court must countenance it.  Mrs. Conversano seeks to have an immediate discharge of her debt and to avoid the enforcement mechanisms available to a creditor under state law.  To obtain that discharge, Mrs. Conversano must comply with the provisions of the Bankruptcy Code regardless of what would occur outside of bankruptcy.  It is this court's responsibility to analyze whether a case is an abuse without considering what the debtor might achieve under non-bankruptcy law.

Having determined that this case must be dismissed pursuant to the means testing provisions of § 707(b)(2), the court need not consider the motion under § 707(b)(3).  However, applying the totality of the circumstances, the court also finds in the alternative that this case is an abuse.  It simply does not pass the "smell test" cited approvingly by the Sixth Circuit in the pre-BAPCPA case of *Indus. Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124 (6th Cir. 1991), based on the following facts: there was only one household credit card used to pay for *all* of the household expenses; both spouses used the credit card; the non-filing spouse has substantial income; and one creditor is targeted by this filing.  Accordingly, the BA's motion pursuant to § 707(b)(3) will be allowed.

## CONCLUSION

Based on the foregoing, the bankruptcy administrator's motion to dismiss pursuant to §§ 707(b)(1) and (b)(3) is ALLOWED.  The debtor may convert the case to one under chapter 13 within 14 days of this order, failing which the case will be dismissed without further notice or hearing.

## END OF DOCUMENT

12